IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

JENNY LYNN TUCKER                                                    PLAINTIFF

VERSUS                                          CIVIL ACTION NO. 2:07cv4-KS-MTP

MICHAEL J. ASTRUE
Commissioner of Social Security                                     DEFENDANT

## REPORT AND RECOMMENDATIONS

Plaintiff, Jenny Lynn Tucker, brings this action pursuant to 42 U.S.C. § 205(g) of the

Social Security Act requesting judicial review of a final decision of the Commissioner denying

her claim for disability benefits.  This matter is now before the court on the defendant's Motion

for an Order Affirming the Decision of the Commissioner [10] and on Tucker's Motion for

Judgment on the Pleadings [7] seeking either a reversal of the Commissioner's final decision or,

in the alternative, a remand of the case to the Commissioner for further administrative action.

Having considered the pleadings, the transcript of the record and applicable law and being thus

fully advised in the premises, the undersigned recommends that the Commissioner's decision be

affirmed.

## PROCEDURAL HISTORY

Plaintiff applied for a period of disability and disability insurance benefits under Title II

of the Social Security Act on February 15, 2005 alleging disability beginning January 27, 2005.

Her claim was denied initially on July 1, 2005 and upon reconsideration on July 26, 2005.  On

July 29, 2005, Plaintiff filed a timely request for a hearing before an Administrative Law Judge

(ALJ).

Plaintiff appeared and testified before ALJ Nancy Brock on January 4, 2006 and on June

27, 2006, the ALJ rendered her decision finding the Plaintiff not disabled under § 216 (I) and

§ 223 (d) of the Social Security Act through September 30, 2005.  Plaintiff requested that the

Appeals Council review the ALJ's decision on July 3, 2006, but on November 6, 2006 the

Appeals Council declined to review the decision, thus exhausting Plaintiff's administrative

remedies.  Plaintiff now seeks judicial review by this Court under Section 205(g) of the Social

Security Act.

<u>MEDICAL/FACTUAL HISTORY</u>

Plaintiff has complained of various maladies and has been under the care of physicians

Dr. Chris Mauldin, Dr. Ramesh Singh and Dr. Aremmia Tanious since 1996.[1]  Plaintiff

experienced a spontaneous dissecting carotid artery in 1999 and was placed on Coumadin[2] for a

period of time following the hospitalization.  However, Plaintiff "has not had any trouble since,"

and has no further need "to repeat any further studies for the carotid arteries..." R. at 165.

Plaintiff reported to physicians numerous times that she suffers from headaches and was

prescribed various treatments for these complaints.[3]  Although Plaintiff has at times described the

headaches as "severe," her medical records also indicate that she experienced periods of

---

[1]According to Plaintiff's record, dates of treatment with Dr. Chris Mauldin range from March 26, 1996 until January 7, 2005. R. at 133-146.  Additionally, medical records indicate that Plaintiff has been a patient of Drs. Singh and Tanious since August 27, 1999 following hospitalization for spontaneous extra-cranial left ICA dissection.  R. at 202.

[2]Anticoagulant medication.  On October 27, 1999, Dr. Singh notes that Plaintiff could wean off of the Coumadin over the next week and could thereafter take coated ASA 81 mg (aspirin).  R. at 201.

[3]R. at 139, 142, 155, 162-165, 199, 201, 202.

improvement and stability. R. at 139.[4]  Additionally, in spite of Plaintiff's complaints regarding these headaches, she declined preventative medicine.[5]  R. at 165.

Other medical records confirm that Plaintiff declined preventative medications for the headaches.  Dr. Aremmia Tanious wrote to Dr. Holifield on December 14, 2004 that "[s]he has frequent headaches,...[t]he headaches are throbbing in character, associated with nausea [but] she does not want to take medicine on a regular basis.  She was put on Depakote before by Dr. Singh as a preventative treatment for her migraines, [but] she has not taken it since 1999." R. at 162. Further, plaintiff testified at the hearing before the ALJ that she did not take any preventative medications for migraines.  R. at 218, 219.

Additionally, Plaintiff has complained of neck pain[6] and attributes it to "degenerative C spine disease." R. at 216.  Dr. Tanious stated likewise on January 24, 2005 in a generic letter in which he stated that he thought Plaintiff was disabled.[7]  R. at 161.  Just four days prior on

---

[4]Dr. Chris Mauldin noted on September 10, 2002 that Plaintiff had a history of migraines but had not had one lately. R. at 139.  Dr. Singh noted that Plaintiff seemed to be doing well during a follow-up visit in August 1999 and that her "headaches [were] certainly better." R. at 202. And, in October 1999, Dr. Singh stated that Plaintiff "had only a couple of headaches since her last visit two months ago." R. at 201.

[5]Dr. Singh noted in a letter to Dr. Holifield that he recommended "Zomig at the onset of any headache to be used as an abortive treatment, especially because she does not want to take any prophylactic treatment and dose [sic] not like to take medicine on a regular basis." R. at 165.

[6]During the hearing with the ALJ, the Plaintiff stated, "[m]y neck hurts me all the time.  I have a lot of pain in my neck.  Most of the time it feels like my neck is not stable enough to hold my head up..." R. at 216.

[7]In a "to whom it may concern" letter, Dr. Tanious stated that "Ms. Tucker has degenerative cervical spine disease, migraine headaches, and depression.  She has trouble performing her job because of all the above medical problems." R. at 161.

January 20, 2005, Plaintiff had a bone scan[8] ordered by Dr. Tanious due to Plaintiff's complaints

of neck pain.   Although the scan indicated degenerative uptake in both knees, there

"[s]pecifically, [was] no abnormal uptake in the cervical spine." R. at 167.  It revealed an

"essentially normal exam." R. at 167.  In addition, numerous medical records reveal that Plaintiff

had "full range of motion" of her neck. R. at 133-137, 139-144.

Plaintiff's other complaints include knee and back pain.  R. at 133, 217.  Plaintiff injured

her right knee when opening a door and presented to Dr. Chris Mauldin with swelling of the joint

and bruising.  An x-ray of the knee revealed some degenerative joint disease but no fractures or

other injuries.[9]  R. at 134.  During a later office visit with Dr. Mauldin, it was noted that she had

been "treated successfully with a Medrol DosePak [and]...Celebrex [but she] ha[d] pain to

palpation around that right knee joint and [did] have a little effusion of the joint."[10]  R. at 133.

Plaintiff also testified that she had two prior surgeries on her right knee: one when she

was twelve and one in 1984.[11]  R. at 217.  Plaintiff received a series of injections to the right knee

in May 2002 and she reported that she was "feeling better" after the first one.  R. at 123.  Dr.

Norwicki stated that "she should use her knee as tolerated and [return] for final evaluation in six

weeks." R. at 123.  The record does not indicate a follow-up visit with Laurel Bone and Joint.

As stated before, Plaintiff complained of backaches and had a lumbar laminectomy in

---

[8]Plaintiff had an MRI of the head and cervical spine which were essentially negative except some posterior and left lateral disc protrusion at C5 and C6-7. R. at 169, 171, 173.

[9]This injury occurred in November 2004.  R. at 134.

[10]This visit was on January 7, 2005, approximately five weeks after injuring her knee with the door.

[11]The surgery in 1984 was arthroscopic. R. at 217.

2000.  R. at 165, 217-218.  Dr. William Hand[12] noted that although Plaintiff had some neck and low back pain, "[it] ha[s] responded to medication." R. at 179.  Also, during a standardized functional capacity evaluation, Plaintiff "demonstrated smooth and coordinated movement throughout the testing procedure" [but] "was unable to perform as much weight on the lifting items on the second day of testing secondary to complaints of increased right knee pain, increased back pain and increased cervical pain." R. at 207.  According to the physical therapist, "Client demonstrated appropriate response to effort and discomfort during the testing procedure." R. at 207.

Plaintiff detailed additional ailments of fibromyalgia[13] and stomach pain.  R. at 219, 222. During testimony with the ALJ on January 4, 2006, Plaintiff reported that she had seen Dr. Tanious about a month prior because her stomach was "swelling and hurting real bad." R. at 222. Medical comments on December 12, 2005 indicate that Dr. Tanious found Plaintiff's abdomen was "soft with no palpable organs or masses...[and] Plaintiff had [a] [h]istory of abdominal pain with bloating sensation, improved with Reglan." R. at 196-197.  On August 10, 2005, Dr. Tanious stated in Plaintiff's medical records that his plan included a "CAT scan of the abdomen and pelvis."[14]  R. at 199.

Plaintiff was diagnosed with depression and general malaise and was treated with

---

[12]Dr. William Hand, in a Medical Consultant Review, made the notation on June 24, 2005. R. at 179.  Plaintiff voiced concern that Dr. Hand may have been referring to another patient.  Plaintiff's brief at 13.

[13]Dr. Tanious noted in medical records dated February 15, 2005, that Plaintiff's aching all over, mainly in the neck, upper back, and shoulder was "[p]ossible fibromyalgia causing this diffuse nonspecific pain."  R. at 153.

[14]Plaintiff stated in her testimony that a CAT scan had revealed diverticulosis.  R. at 222.

Wellbutrin, Cymbalta, and Paxil.  R. at 141, 153, 154, 164, 197.  Dr. Tanious' notes indicate that

Plaintiff was "happy with the Paxil but still has some nervousness."  R. at 196.  Plaintiff testified

to the ALJ that she thought the Paxil was effective for the depression and believed it had helped.

R. at 219.  However, Plaintiff testified that she had only recently started taking Paxil and had not

taken anything before that. R. at 219.

Joanna McRaney, Ph.D. determined that Plaintiff admitted, "some depressive symptoms

[but] reported her physical problems to be the only reason she was unable to work.

She...appear[ed] depressed, and became tearful during the evaluation.  She indicated problems in

her marriage, and feelings of social isolation."[15]  R. at 176-178.  Dr. McRaney stated that

Plaintiff's "depressive symptoms likely contribute not only to emotional distress, they likely

impact her perception of the chronic pain she reports."  R. at 177.

After an initial denial of Plaintiff's application for disability benefits, Plaintiff filed a

timely written request for hearing on July 29, 2005.  The Plaintiff and Ronald K. Smith, an

impartial vocational expert, appeared at the hearing.  Mr. Smith characterized Plaintiff's last

relevant work as a transporter, which would be classified as medium work and unskilled; a

substitute teacher, which would be classified as light work and semiskilled; a cashier, which

would be light work and semiskilled; a sales clerk, which would be light work and semiskilled; a

desk clerk, which would be light work and semiskilled; and an x-ray technology assistant, which

would be light and semiskilled.[16]  R. at 224.

---

[15]Dr. McRaney conducted a Comprehensive Mental Status examination for the Office of
Disability Determination Service.  R. at 176.

[16]"In order to evaluate a claimant's skills and to help determine the existence in the
national economy of work a claimant is able to do, occupations are classified as unskilled,

Applying the Social Security Administration's five-step sequential process for determining whether an individual is disabled, the ALJ determined that although "the record as a whole shows that the claimant does experience mild to moderate pain, and to be susceptible to pain if attempting to perform work beyond her functional capacity, a preponderance of the evidence does not establish that the claimant experiences pain of such severity, intensity and duration, or of an intractable nature as to preclude her from performing sedentary work."  R. at 18.  Therefore, the ALJ found that "[t]he claimant was not under a 'disability,' as defined in the Social Security Act, at any time through September 30, 2005, the date last insured (20 CFR 404.1520(g))."  R. at 19.  The Appeals Council denied Plaintiff review of the ALJ's decision on November 6, 2006.   Aggrieved by this decision, Plaintiff filed a complaint in this Court on August 25, 2007 seeking reversal of the defendant Commissioner's final decision to deny benefits.

<u>BURDEN OF PROOF</u>

In *Harrell v Bowen*, 862 F.2d 471 (5th Cir. 1988), the Fifth Circuit detailed the shifting burden of proof that applies to the disability determination:

> An individual applying for disability and SSI benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act. Once the claimant satisfies his initial burden, the [Commissioner] then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and therefore, not disabled. In determining whether or not a claimant is capable of performing substantial gainful activity, the [Commissioner] utilizes a five-step sequential procedure set forth in 20 C.F.R. § 404.1520(b)-(f):
>
> > 1.    An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical

_____

semiskilled, and skilled.  In classifying these occupations, [the Social Security Administration] uses materials published by the Department of Labor." 20 C.F.R. § 404.1568 (2007).

findings.

2.      An individual who does not have a 'severe impairment' will not be found to be disabled.

3.      An individual who meets or equals a listed impairment of the regulations will be considered disabled without consideration of vocational factors.

4.      If an individual is capable of performing the work he has done in the past, a finding of 'not disabled' must be made.

5.      If an individual's impairment precludes him from performing his past work, other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Harrell*, 862 F.2d at 475 (citations and footnotes omitted).  A finding that claimant "is disabled or not disabled at any point in the five-step process is conclusive and terminates the...analysis." *Id*.  The claimant bears the burden of proof on the first four steps of the analysis, including inability to perform former work.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. denied, 514 U.S. 1120 (1995) (citation omitted).

<u>THE ADMINISTRATIVE LAW JUDGE'S ANALYSIS IN THIS CASE</u>

A preliminary issue before the ALJ in determining whether the Plaintiff was or had been disabled under the Social Security Act was whether Plaintiff met the insured status requirements of the Act.  R. at 12.  The Plaintiff's earning records indicated that she had acquired sufficient quarters of coverage to remain insured through September 30, 2005.  R. at 12.  Therefore, Plaintiff had to establish disability on or before that date in order to be entitled to disability benefits.  R. at 12.

After a hearing and careful consideration of all the evidence, the ALJ rendered her

decision on June 27, 2006.  Applying the five-step analysis established by the Social Security

Administration, the ALJ found that Plaintiff had not engaged in substantial gainful activity at any

time relevant to the decision.  R. at 14.  At step two, the ALJ found that Plaintiff had the

following severe impairments: fibromyalgia and arthritis of the knee.[17]  R. at 14.  The ALJ

acknowledged that Plaintiff alleged disability due to depression, but found that this alleged

complaint was not severe.  R. at 14.

   At step three[18] the ALJ determined that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1, thereby failing to establish a presumption of disability.

R. at 15.

   Before considering step four, the ALJ had to first determine Plaintiff's residual functional

capacity.[19]  The ALJ set forth a comprehensive account of Plaintiff's medical history and found

---

   [17]20 C.F.R. § 404.1520(c) states that an impairment or combination of impairments is
severe within the meaning of the regulations if it significantly limits an individual's ability to
perform basic work activities.  An impairment or combination of impairments is not severe when
medical and other evidence establish only a slight abnormality or a combination of slight
abnormalities that would have no more than a minimal effect on an individual's ability to work
20 CFR 404.1521; SSRs 96-3p, and 96-4p (1996).  If the claimant does not have a severe
medically determinable impairment or combination of impairments, the analysis proceeds to the
third step.

   [18]"When assessing a claim for disability benefits, '[i]n the third step, the medical evidence
of the claimant's impairment is compared to a list of impairments presumed severe enough to
preclude any gainful work.'" *Marahajh v. Barnhart*, 424 F.Supp.2d 915, 925 (S.D.Tex.
2006)(citations omitted) (claimant is deemed disabled under the Social Security Act only if he
demonstrates an inability to engage in any substantial gainful activity and judicial review is
limited to whether Commissioner's decision is supported by substantial evidence on the record as
a whole.)

   [19]An individual's residual functional capacity is her ability to do physical and mental
work activities on a sustained basis despite limitations from her impairments.  20 C.F.R.

that she had the residual functional capacity to perform a full range of sedentary work.  R. at 15.

The ALJ acknowledged that "[t]he objective medical evidence clearly show[ed] that the claimant

has impairments which could reasonably be expected to cause mild to moderate pain and

limitations which would clearly restrict her to no more than sedentary level of activity."  R. at 18.

However, the ALJ found Dr. Tanious' conclusion that Plaintiff was unable to perform any type of

job to be inconsistent with other medical evidence as well as his/her own records.  R. at 18.

Furthermore, the ALJ opined that Plaintiff's own testimony regarding her limitations were

consistent with a sedentary level of activity, and "that while it is unquestionably true, the

claimant's impairments have produced some pain and discomfort, this has not been shown to be

so severe as to prevent the claimant from being present and attentive in a normal job setting

requiring no more than sedentary work."  R. at 18.

   At step four, the ALJ found that Plaintiff was a younger individual between the ages of

forty-five and forty-nine, had at least a high school education, was able to communicate in

English, but was unable to perform past relevant work.[20]  R. at 18.  The ALJ noted that the

vocational expert had classified Plaintiff's past relevant work as a teacher's aide, cashier, sales

clerk, medical records clerk, x-ray tech assistant and transporter as ranging from light to medium

exertionally, which was beyond the Plaintiff's determined residual functional capacity for no

more than a sedentary level of activity.  Therefore, the ALJ found that Plaintiff was unable to

_____

404.1520(e).

   [20]The term past relevant work means work performed (either as the claimant actually
performed it or as it is generally performed in the national economy) within the last 15 years or
15 years prior to the date that disability must be established.  If the claimant has the residual
functional capacity to do her past relevant work, the claimant is not disabled.  R. at 14.

perform past relevant work.  R. at 18.

The ALJ proceeded to the final step of the analysis where she was to determine whether the Plaintiff was able to do any other work considering her residual functional capacity, age, education, and work experience.  The ALJ explained that, "[w]hen the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the...rules[21] are used as a framework for decision making unless...a rule directs a conclusion of 'disabled' without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14)."  R. at 19.  Considering all of the aforementioned factors, the ALJ concluded that "through the date last insured, a finding of 'not disabled' was directed by Medical-Vocational Rule 201.21."[22]  R. at 19.  Furthermore, the ALJ ruled that in considering the Plaintiff's residual functional capacity, age, education, and work experience, 'there were jobs that existed in significant numbers in the national economy that the claimant could have performed."[23] R. at 18.

<u>STANDARD OF REVIEW</u>

This Court's review of the Commissioner's decision is limited to inquiry into whether

---

[21]The Medical-Vocational Rules.

[22]20 C.F.R. Pt. 404, Subpart P, App. 2 includes the Medical-Vocational Guidelines which "reflect the major functional and vocational patterns which are encountered in cases which cannot be evaluated on medical considerations alone, where an individual with a severe medically determinable physical or mental impairment(s) is not engaging in substantial gainful activity and in the individual's impairment(s) prevents the performance of his or her vocationally relevant past work.

[23]"Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [a claimant is] able to meet with [her] physical or mental abilities and vocational qualifications."  20 C.F.R. § 416.966 (2008).

there is substantial evidence to support the Commissioner's findings and whether the correct legal standards were applied in evaluating the evidence. *Hollis v Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v Heckler*, 701 F.2d 162, 164 (5th Cir. 1983). To be substantial the evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.* at 164 (citations omitted). Conflicts in the evidence are for the commissioner, not the courts, to resolve. *Selders v Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). A court may not reweigh the evidence, try the issues de novo or substitute its judgment for the Commissioner's, "even if the evidence preponderates against" the Commissioner's decision. *Harrell v Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). If the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Selders*, 914 F.2d at 617.

## THE ISSUES

"The scope of [this Court's] review of the [ALJ's] decision to deny [Plaintiff's] disability benefits...is restricted to two inquiries: (1) does the record contain substantial evidence which supports the [ALJ's] position; and (2) did the [ALJ] apply the proper legal standards in evaluating the evidence?" *Hollis v Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). On appeal, Plaintiff attacks three aspects of the ALJ's decision. First, Plaintiff challenges the ALJ's finding that Plaintiff's depression and migraine headaches were not severe impairments. Second, Plaintiff challenges the ALJ's assessment of her residual functional capacity claiming it is not supported by substantial evidence; and third, Plaintiff challenges the ALJ's sequential analysis at

step five asserting reversible error because the ALJ did not require the vocational expert to give

DOT numbers and the exertional skill levels of the jobs.

      A.      Plaintiff argues that the ALJ committed an error of law at step two of the

sequential analysis in failing to find that her depression and migraine headaches are severe

impairments.  Plaintiff's brief at 9.  As stated previously, the ALJ utilizes a five step sequential

analysis in determining disability.  At step two, the Plaintiff has the burden of proving that he/she

has a "severe impairment," and if not, he/she will not be found to be disabled.  *Harrell v Bowen*,

862, F.2d at 475 (5th Cir. 1988).  The ALJ must determine whether a claimant's impairment is

severe, irrespective of age, education, or work experience.  *Stone v Heckler*, 752 F.2d 1099, 1100

(5th Cir. 1985)(citing 20 C.F.R. § 404.1520(c) (1984).  If the ALJ finds a severe impairment, it is

compared against a list of impairments found in 20 C.F.R., Pt. 404, Subpt. P, App. 1., and if the

Plaintiff's impairment is not listed, the third step must be considered.  *Id*. at 1101.

      If not included in the list of impairments, Plaintiff must show that he/she has an

impairment that significantly limits his/her physical or mental ability to do basic work activities.

If such impairment is not found, then a finding of not disabled will be rendered.  *Stone v Heckler*,

752 F.2d at 1101.  "As with other factual determinations in this area, the question whether the

applicant is able to work despite some resulting pain is within the province of the administrative

agency and is to be upheld if supported by substantial evidence."  *Newborn v Harris*, 602 F.2d

105, 107 (5th Cir. 1979).

      Plaintiff cites to medical records which indicate complaints of headaches and related

treatment; specifically, visits with Dr. Tanious just three weeks prior to filing for disability, and

with Dr. Chris Mauldin.[24]  Plaintiff's brief at 9, 10.  The ALJ also noted that Plaintiff had

headaches that could "reasonably be expected to produce the alleged symptoms" but, after

considering the evidence of the record, found that Plaintiff's statements "concerning the

intensity, duration and limiting effects of these symptoms [were] not entirely credible."  R. at 15.

"[I]n cases involving complaints of disabling pain due to migraine headaches, courts look to

other objective medical signs to determine whether the claimant's complaints are consistent with

the existence of disabling migraine pain..."  *Wiltz v. Barnhart*, 484 F.Supp.2d. 524, 533 (W.D.La,

2006) (The ALJ has sole responsibility for determining a claimant's disability although the

opinion and diagnosis of a treatment physician should be afforded considerable weight.)

Although Plaintiff reported to physicians that her headaches cause nausea and vomiting

and require her to lie down, the record also indicates that Plaintiff continued to work for a

number of years after her first complaints to physicians, refused to take preventative medicine,[25]

---

[24]The medical records from the office visit with Dr. Mauldin on December 28, 2001, stated that Plaintiff "has had some severe headaches lately."  R. at 142.  This visit, along with the other two office visits mentioned by the Plaintiff, comprise three out of approximately forty-eight medical visits (either to physician's offices or an emergency room) between 1995 and 2005 as shown in the Plaintiff's medical record.  Of these forty-eight visits, approximately thirty-one indicate no complaint of or treatment for headaches.  R. at 125, 127, 130, 131, 134, 135-141, 143-146, 147, 153, 155.

[25]According to Dr. Tanious' medical records, Plaintiff did not want to take any prophylactic treatment, nor did she want to take medicine on a regular basis.  R. at 165.  Dr. Tanious stated in a letter to Dr. Holifield on December 14, 2004 that although Plaintiff had been prescribed Depakote by Dr. Singh as a preventative treatment for her migraines, she had not taken it since 1999.  R. at 162.  As the Commissioner has noted, other circuits consider a claimant's lack of ongoing treatment to be relevant to the severity of their alleged impairments.  Defendant's brief at 9 (quoting *Irlanda Ortiz v Sec'y of Health and Human Servs.*, 955 F.2d 764, 769 (1st Cir. 1991).

and reported at times that her headaches were better.[26]  R. at 165, 196, 201, 202.

"A claimant will not be determined to be disabled based on self-declarations alone, including pain," and "[a]lthough pain may serve as a basis for disability, the issue is not the existence of pain but whether the pain suffered by the claimant is of sufficient severity to prevent work activity." *Hollis v Bowen*, 837 F.2d at 1382.  Certainly the record includes accounts of Plaintiff reporting to physicians and the ALJ that she suffered from headaches; however, Plaintiff worked four to five years after reporting to physicians that she suffered from headaches and declined preventative treatments.  Defendant's brief at 8, 9.

Additionally, Plaintiff reported to Dr. Tanious on December 14, 2004 that she was "planning to quit her current job and find another job so she does not have to carry heavy things. Her current job requires loading and unloading."  R. at 155.  This fact is somewhat contradictory to Dr. Tanious' statement one month earlier in which he stated in a "To Whom It May Concern" letter that, [he] believe[d] that Ms. Tucker [was] unable to perform any type of job at [that] point. [He] consider[ed] her totally disabled."  R. at 161.  In further support of the ALJ's finding that Plaintiff's headaches were not severe, Plaintiff stated to Dr. McRaney that the reason she quit her last job at Burke's, an outlet store, was because of "diffuse pain through her neck, shoulder, knees, and feet" - not headaches or depression.  R. at 176.

─────────────────────

[26]Dr. Singh stated in medical records on August 27, 1999 that Plaintiff "seems to be doing well, and her headaches are certainly better."  R. at 202; Two months later, Dr. Singh stated that Plaintiff had reported only a couple of headaches since her visit two months earlier, and although she had been given Maxalt MLT samples for headaches, she had not taken it because she did not know how she would react to it, but she had continued with Depakote without any problems.  R. at 201.  On September 10, 2002, Dr. Chris Mauldin reported that Plaintiff had "a history of migraine headaches but no migraines lately.  R. at 139.  After examining Plaintiff on December 12, 2005, Dr. Tanious noted that Plaintiff reported, "Reglan helped her headaches [but] she is not taking Reglan anymore."  R. at 196.

Plaintiff argues that *Stone v. Heckler*[27] promotes a "slight abnormality" standard for determining whether an impairment is severe; i.e., unless an impairment is a "slight abnormality," it is considered severe.  Plaintiff's brief at 11.  In *Stone v Heckler*, the Fifth Circuit stated that, "[m]ost of the cases raising the question of whether an impairment is severe turn on the issue of substantial evidence."  *Stone*, 752 F.2d at 1102 (5th Cir. 1985)(citations omitted).  And, the court reflected that it had,

> "Construed the current regulation as setting the following standard in determining whether a claimant's impairment is severe: '[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" *Id*. at 1101.

The court opined that the ultimate objective of 42 U.S.C. § 423(d)(1)(1982) was "to provide assistance for that person who is unable 'to engage in *any* substantial gainful activity.'" *Stone v Heckler*, 752 F.2d at 1104. (emphasis added) The court declared that "congress has stated that the Act itself contains the specific requirements a claimant must meet to be considered disabled," and that "the Secretary does not have the authority to construe the severity regulation so as to deny benefits to individuals who are disabled within the meaning of section 423(d)." *Id*. at 1105.  The court concluded that it would "in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement *unless* the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984)." *Stone v Heckler*, 752 F.2d at 1106. (emphasis added)

The Plaintiff's argument concerning the ALJ's analysis is without merit.  Not only did the

---

[27] 752 F.2d 1099 (5th Cir. 1985).

ALJ give a lengthy account of the Plaintiff's medical history, she stated that:

> [A]lthough the claimant may have had depression prior to September 30, 2004, the lack of treatment leads the undersigned to conclude that it did not impose any limitations on her ability to function or else she would have sought treatment. Therefore, this impairment is determined to have caused at most a *slight abnormality* having such a minimal effect on the claimant that it would not be expected to interfere with her ability to work.  This impairment is not "severe" within the meaning of the Act.  **This finding is in accordance with *Stone v. Heckler*, 752 F.2d 1033 (5th Cir. 1985).**

R. at 14. (emphasis added)

Certainly, the record supports the ALJ's findings concerning Plaintiff's depression and choices concerning treatment.  As stated previously, Plaintiff was diagnosed with and prescribed various medicines for depression or malaise.   However, during the examination with psychologist Joanna McRaney, "[s]he appeared puzzled as to why she was seeing a psychologist, although she did admit some depressive symptoms.  She reported her physical problems to be the only reason she was unable to work."  R. at 176.  Dr. McRaney concluded that Plaintiff did "not appear, based on psychiatric factors, to be unable to work, although her reliability could easily be impacted by the loss of energy and motivation that accompanies depression."  R. at 177, 178.  Finally, Dr. McRaney noted that Plaintiff's "[p]rognosis was fair, depending on access to, and *compliance with, treatment* [and that] she [was] capable of managing her own finances."  R. at 178.  (emphasis added)

As the Commissioner asserts, mere diagnosis and treatment of a condition does not automatically make the condition "severe."  *See*, *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).  Plaintiff bears the burden regarding severity of an impairment at step two.  She simply failed to meet this burden with respect to the headaches and depression.  The ALJ's conclusions

in this respect are amply supported by substantial evidence.

B.     Plaintiff contends that the ALJ's assessment of her residual functional capacity contains errors of law and is not supported by substantial evidence.  Specifically, she argues that the ALJ did not consider the entire record but based her assessment "primarily on selected parts of the medical source statement of Dr. Aremmia Tanious."  Plaintiff's brief at 12.  The court finds this contention to be without merit.

The ALJ's ruling is replete with references to plaintiff's medical records and history.  The record verifies that the ALJ took notice of Plaintiff's office visits with Westridge Family Clinic, South Central Regional Medical Center, Internal Medicine Clinic, MEA Medical Clinic, and Laurel Bone & Joint Clinic.  R. at 14-17.  Additionally, the ALJ outlined at length the different maladies, diagnostic tests, and treatments that the Plaintiff had encountered.  R. at 14-19.

Plaintiff underwent a functional capacity evaluation ordered by Dr. Tanious on December 21, 2005 and December 22, 2005, which revealed that she "demonstrated smooth and coordinated movement throughout the testing procedure [and] was able to perform sitting activities."  R. at 207.  On the second day of testing, Plaintiff did not "perform as much weight on the lifting items" because of complaints of cervical pain and pain in her right knee and back. R. at 207.  Upon concluding the functional capacity evaluation, Dr. Tanious completed a "Medical Assessment of Ability to Do Work-Related Activities" form.  R. at 203-206.  Dr. Tanious indicated that Plaintiff's ability to lift/carry was not affected by the impairment and that she could carry five pounds from one-third to two-thirds of an eight hour workday.  R. at 203. Also, Dr. Tanious stated Plaintiff could stand and/or walk for a total of four hours per day with the ability to climb, balance, stoop, crouch, kneel, or crawl occasionally during the day.  R. at

203, 204.  "Occasionally" is defined as "from very little up to one-third of an eight hour

workday."  R. at 204.

Plaintiff argues that "only the day 1 limitations reported by Dr. Tanious in the Medical

Source Statement were adopted by the Administrative Law Judge in the first two

hypotheticals...[and] day 2 findings reflecting reduced limitations due to pain and edema, were

omitted by the Administrative Law Judge..."  Plaintiff's brief at 12, 13.

However, as the Commissioner noted:

Such an inference is counterintuitive as Plaintiff's argument requires this court to
assume that for some unexplained reason Dr. Tanious ordered two days of
functional capacity testing, but only relied upon the first day of this testing when
assessing Plaintiff's RFC.  Simple logic suggests that Dr. Tanious' RFC
assessment was reflective of the results of both days of the testing she ordered.
Such an inference is even more problematic given that the only recorded evidence
from this testing is a summary that accounts for both days of testing and does not
provide specific functional limitations evidenced on each day of testing.
Wherefore, there is no evidence of any specific *day one* findings upon which Dr.
Tanious could have relied.

Defendant's brief at 12.  (citations omitted) (emphasis added)

Moreover, Plaintiff made no objection to the form completed by Dr. Tanious at the

hearing and Plaintiff herself confirmed the findings made by Dr. Tanious.  R. at 223, 203-206.

The ALJ's questioning of the Plaintiff revealed:

Q.      How long can you stand up at one time?
A.      I can stand up for probably maybe 30 minutes at the most, maybe 20 minutes.
                                    .   .   .
Q.      How about lifting?  How much can you lift?
A.      About five pounds without it hurting me.
Q.      Do you have any difficulty sitting?
A.      Only, I mean I can sit, but I have to move around, adjust myself because of my
back, my neck.

R. at 223.

The ALJ has the responsibility for assessing residual functional capacity. When the Plaintiff has a severe impairment(s), but the symptoms, signs, and laboratory finding do not meet or equal those of a listed impairment in Appendix 1 to Subpart P of Part 404 - Listing of Impairments, the ALJ will consider the limiting effects of all Plaintiff's impairments, even those that are not severe, in determining Plaintiff's residual functional capacity. *See*, 20 C.F.R. § 404.1545, 404.1546. The ALJ considered Dr. Tanious' medical records concerning the functional capacity test, the entire record, and Plaintiff's testimony in determining Plaintiff's residual functional capacity, thereby meeting the requirements of the guideline.

Plaintiff argues that the ALJ's finding at step one that "[t]he claimant has not engaged in substantial gainful activity at any time relevant to this decision" somehow undermines her decision. Plaintiff's brief at 14. (citations omitted) Apparently, Plaintiff argues that if she had not worked at the regulatory level of substantial gainful activity, she had no past relevant work to which she could return. Plaintiff's brief at 14. However, the ALJ did not rule that Plaintiff could return to her past relevant work, rather she determined that Plaintiff "had the residual functional capacity to perform a full range of sedentary work.[28] R. at 15.

The Plaintiff further argues that the ALJ committed an error of law by failing to consider each of the seven strength demands separately and not discussing Plaintiff's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis. Plaintiff's brief at 15. However, the ALJ adequately considered the Plaintiff's strengths and

---

[28]Sedentary work involves lifting no more that then pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and the other sedentary criteria are met. 20 C.F.R. § 220.132.

limitations as determined by Dr. Tanious and also stated them to the vocational expert during the

hearing.  R. at 17, 225.  The following was presented to the vocational expert at the hearing:

> We have an individual who is 47 years old, has a high school education and has
> the work history that you have just detailed.  This individual is limited to lifting
> no more than five pounds at one time.  It should probably be five pounds
> occasionally.  The individual can stand one hour at a time but no more than four
> hours out of an eight-hour workday.  Sitting is not limited, but climbing,
> balancing, stooping, crouching and so forth are definitely limited to occasionally.
> There should not be a lot of pushing and pulling with the arms and legs.  With
> those limitations, could this individual do any of her past work?
> A.      No, ma'am.

R. at 225. (emphasis added)

At that point, the ALJ went on to question the vocational expert about the availability of

sedentary jobs in the economy that do not involve lifting more than five pounds at a time, and the

vocational expert answered by describing three of those jobs.[29]  R. at 225.  As evidenced in the

ALJ's opinion and corroborated during the questioning of the vocational expert, the ALJ

adequately considered and discussed Plaintiff's strengths and limitations as required.  "The ALJ

is bound by the rules of this Court to explain his reasons for rejecting a claimant's complaints of

pain...[but] not follow[ing] formalistic rules in his articulation compromises no aspect of fairness

or accuracy that this process is designed to ensure."  *Falco v Shalala*, 27 F.3d 160, 164 (5th Cir.

1994) (ALJ satisfied obligation to explain reasons for rejecting claimant's complaints of pain,

---

[29]The vocational expert stated Plaintiff would be able to work as a booth cashier at a self-service gas station, which would be a sedentary, unskilled job, SVP level of two; and there are approximately 1,000 in the nation.  She would be able to work as a phone solicitor, which would be a sedentary, semiskilled job that would have an SVP level of three; and, there would be approximately 870 of those jobs in the State of Mississippi and approximately 437,510 nationwide.  She would be able to work as a dispatcher, which would be sedentary work, semiskilled, and have a SVP level of three; and, there would be approximately 148 of those in the State of Mississippi and approximately 31,214 in the nation.  The vocational expert also stated there would be other examples of sedentary jobs existing in the economy.  R. at 225-226.

although ALJ did not specifically articulate evidence that supported decision as to five objective signs of pain-weakness).

While SSR 96-8p requires the ALJ to consider each function – such as sitting, standing, lifting, etc. –  the record as cited above reflects that the ALJ did so, even if she did not do so with the particularity or in the format desired by plaintiff.  This Court finds that the ALJ adequately addressed these matters as shown both in questions posed to the vocational expert at the hearing[30] and in her decision.  R. at 17.   Moreover, in considering a similar argument, the Fifth Circuit has held an ALJ's alleged failure to explain her findings as to various functional limitations is not reversible error where, as here, the ALJ adequately explained the reasons for her decision and the decision compromised "no aspect of fairness of accuracy...."  *Falco*, 27 F.3rd at 164.

For the reasons stated above, this Court finds there is substantial evidence in the record to support the ALJ's determination that the Plaintiff had a residual functional capacity to perform sedentary work, and "[w]e do not sit in *de novo* review nor may we re-weigh the evidence.  The ALJ enjoys the benefit of perceiving first-hand the claimant at the hearing."  *Falco,* 27 F.3d at 164. (citations omitted)

C.      The final argument Plaintiff makes is that the ALJ committed errors of law at Step 5 of the sequential analysis by failing to require the vocational expert to give DOT numbers

---

[30]Additionally, the ALJ described Dr. Tanious' physical assessment and reported his findings of "lift[ing] a maximum of 5 pounds occasionally and frequently, stand and/or walk a total of 4 hours in an *8-hour workday* and 1 hour without interruption, unlimited sitting, occasional climbing, balancing, stooping, crouching, kneeling and crawling, and no pushing."  R. at 17. (emphasis added)

and the exertional and skill levels of the jobs, with SVPs.[31]  Plaintiff's brief at 15.  According to

the five-step analysis,

> Once the claimant satisfies his or her burden under the first four steps, the burden
> then shifts to the Commissioner at step five to show that there is other gainful
> employment available in the national economy that the claimant is capable of
> performing.  This burden may be satisfied *either* by reference to the Medical-
> Vocational Guidelines of the regulations or by expert vocational testimony or
> other similar evidence."  *Bridges v Commissioner of Social Sec. Admin.*, 278
> F.Supp.2d 797, 803 (5th Cir. 2003) (emphasis added)

It is clear the ALJ based her finding of "not disabled" upon the Medical Vocational Rule

201.21. R. at 19.  The ALJ stated, "[b]ased on a residual functional capacity for the full range of

sedentary work the undersigned concludes that, through the date of last insured, considering the

claimant's age, education, and work experience, a finding of 'not disabled' is directed by

Medical-Vocational Rule 201.21."[32]  R. at 19.  As noted by the Commissioner, there "is no

evidence that the ALJ relied on the vocational expert's testimony when rendering her decision

[and] Plaintiff fail[ed] to challenge this reasoning."  Defendant's brief at 14, 15.  In light of the

abovementioned ruling by the Fifth Circuit and the facts from the record, this Court finds that the

---

[31]Plaintiff asserts the ALJ is required to do this by Social Security Ruling 00-4p.  She
argues that if the vocational expert's testimony is not consistent with the DOT, an explanation of
the inconsistencies is required for decision making.  Plaintiff's brief at 15.  The DOT lists a
specific vocational preparation (SVP) time for each described occupation.  SSR 00-04P (2000)

[32]The medical-vocational guidelines consider age, education, and previous work
experience in determining whether a claimant is disabled or not disabled.  Medical-Vocational
Guideline 201.21 mandates a "maximum sustained work capability limited to sedentary work as
a result of severe medically determinable impairment(s)" finding when the claimant is a younger
individual 45-59, is a high school graduate or more, and has previous work experience which is
skilled or semi-skilled.  *See*, 20 C.F.R. Pt. 220, App. 2.  The ALJ recognized that the Plaintiff
was 46 years old on the date of last insured and had at least a high school education and able to
communicate in English. R. at 18, 19.

ALJ complied with SSR 00-4p[33] at Step 5 of the sequential analysis and has met her burden of showing there was work which existed in the national economy that Plaintiff could perform.

<u>CONCLUSION</u>

The court finds that the Commissioner's decision that Jenny Lynn Tucker is not entitled to disability benefits under the Social Security Act is supported by substantial evidence and utilizes correct legal standards.  It is, therefore, the recommendation of the undersigned that the court grant the Commissioner's motion [10] to affirm the denial of benefits.  The undersigned further recommends that the Plaintiff's motion for judgment on the pleadings [7] be denied.

<u>NOTICE OF RIGHT TO OBJECT</u>

In accordance with the rules, any party within ten days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party.  The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this court with instructions.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to

---

[33]SSR 00-4p states in part that, "**[b]efore relying on VE**...evidence to support a disability determination...the adjudicator must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs...and information in the Dictionary of Occupational Titles, published by the Department of Labor, and explain in the determination...how any conflict that has been identified was resolved.  SSR 00-4p (2000). (emphasis added) As stated, the ALJ did not rely on the vocational expert's description of work available in the economy for her decision that Plaintiff was not disabled.

which the party has not objected.  *Douglass v. United Services Automobile Association,* 79 F.3d

1415, 1428-29 (5th Cir. 1996).

     THIS the 15th day of February, 2008.

                             s/ Michael T. Parker

                             United States Magistrate Judge

25